## COMMONWEALTH vs. RUSSELL M. LAHTI.

Norfolk.  September 9, 1986. — December 18, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Constitutional Law,* Admissions and confessions, Result of illegal interrogation. *Evidence,* Admissions and confessions, Result of illegal interrogation.

This court affirmed the allowance of a motion to suppress the testimony of two child victims named in indictments charging the defendant with sexual offenses, in circumstances where the police, through false promises of leniency and through threats, had obtained a statement from the defendant incriminating himself with respect to the two children, which statement was subsequently suppressed as involuntary; where the judge ruling on the motion to suppress the children's testimony was warranted in concluding that the police had obtained the defendant's first statement for the very purpose of discovering the defendant's crimes and witnesses to testify to them; and where the link between the defendant's illegally-obtained statement and the children's expected testimony was so close that to permit the Commonwealth to use the testimony at a trial of the defendant would defeat the exclusionary rule's purpose to protect constitutionally guaranteed rights. [832-837]

INDICTMENTS found and returned in the Superior Court Department on May 20 and June 3, 1985.

A motion to suppress evidence was heard by *Thomas E. Dwyer,* J. An application for an interlocutory appeal was allowed in the Supreme Judicial Court for the county of Suffolk by *Liacos,* J., and the case was reported by him.

*Stephanie Martin Glennon,* Assistant District Attorney, for the Commonwealth.

*Joseph T. Doyle, Jr.* (*William P. Smith* with him) for the defendant.

O'CONNOR, J. A grand jury returned five indictments charging the defendant with rape of a child and three indictments charging him with indecent assault and battery on a child under

fourteen years of age. The indictments named two victims. The defendant moved to suppress the alleged victims' testimony. A judge ruled that the victims' testimony constituted "fruit of the poisonous tree," see *Wong Sun* v. *United States,* 371 U.S. 471 (1963), and allowed the motion. A single justice of this court granted the Commonwealth's application for an interlocutory appeal and referred the case to the full court. We affirm.

The question on appeal is whether the judge correctly concluded that the victims' anticipated testimony was tainted fruit of the defendant's involuntary statements to the police. Because the standards applicable under art. 12 of the Massachusetts Declaration of Rights have not been separately argued by the parties, we confine our review to the constitutional standards applicable under the Fifth Amendment to the United States Constitution.

The order from which the Commonwealth appeals, suppressing the victims' testimony, was preceded by the allowance by a different judge of the defendant's motion to suppress incriminating statements he had made to the police. The earlier motion, which we shall refer to as the first motion, was allowed on the ground that those statements were made involuntarily. The correctness of that ruling is not in issue. The first motion judge found that on March 22, 1985, the defendant met with detectives at the Quincy police station and discussed an incident of sexual abuse of children "for which he had been brought in." That incident did not involve the victims named in the present indictments. The detectives told the defendant that they had information implicating him in other incidents of sexual abuse of children. They also told him that, if he cooperated with the investigation by waiving his right against self-incrimination and his right to have an attorney present at the questioning, his statements would not be used as the basis of criminal charges against him. In addition, they told him that, if he cooperated, they would recommend to the district attorney that he be included in a sexual offenders' diversion and treatment program rather than be prosecuted. Lastly, the detectives told the defendant that, if he were accepted into that program with-

out having disclosed other sexual experiences he had had with children, there was a risk that the police would discover those incidents and he would be expelled from the program and prosecuted.

On the following day, March 23, 1985, the defendant telephoned one of the detectives and described several incidents involving the victims named in the present indictments. The judge found that the defendant's statements were induced by the detectives' promise of leniency and by the threat that a failure to confess everything would result in harsher treatment. He concluded that the promise and threat were a "calculated attempt to raise an expectation of leniency," that the statements were involuntary, and that their suppression was required. The Commonwealth did not appeal from the allowance of the defendant's motion to suppress his statements.

Thereafter, the defendant moved to suppress the testimony of the two children named as victims in the present indictments on the ground that their testimony would be the fruit of his involuntary statements and therefore inadmissible under *Wong Sun v. United States, supra,* and its progeny. We shall refer to this motion as the defendant's second motion. After a hearing, the second motion judge adopted the findings of the first motion judge, which procedure neither party challenges, and made additional findings. We set forth immediately below the relevant additional findings, quoting them in large measure.

The judge found as follows:

"1. The *corpus delicti* of the crime and the identity of the victims were not known to the police until the defendant told them.

"2. As a result of the defendant's statements to the police, the mother of the children was indirectly informed that the defendant had confessed wrongdoing with her children.

"3. Having thus been informed by a third party, the mother then contacted the police department and was advised by the police that the defendant had made a statement involving sexual misconduct with her children. The police advised her to talk to the children about this, but cautioned that care should be

taken in the manner in which the children were informed because the defendant had claimed that the children were asleep when the sexual acts took place . . . .

"4. The mother did question her children separately and in a guarded manner, not indicating that the defendant had admitted wrongdoing with them. Ultimately, the children did describe to their mother the sexual acts performed by the defendant on them and only then did the mother indicate that the defendant had admitted the story to the police.

"5. Within a day or two, the children went to the police station of their own free will and told their story to the police officer. The mother has expressed a willingness for the children to testify in the trial in the courtroom. .

"6. The children would testify upon questioning that they told their mother of the assaults by the defendant and that she advised them that the defendant admitted the story to the police."

The judge further found that "[t]he Commonwealth clearly did not 'coerce' the children to testify. Their mother was first informed of the defendant's admissions, not by the police, but by her friend, the defendant's girlfriend. The mother then voluntarily called the police and followed their advice on questioning her children in a guarded manner. . . . They later spoke voluntarily to the police. I find no State coercion in this chain of events." The judge concluded that the officers' "intervention . . . trigger[ed] a chain of events that would produce . . . victim/witness[es] willing to press charges and to testify against the defendant." The judge also concluded that the officers "must have realized" that that chain of events would occur, and that the officers "deliberately and intentionally extracted the identities of these witnesses/victims from the defendant."

As we explain below, our decision in this case rests on the judge's findings that the police obtained the defendant's involuntary statement for the very purpose of obtaining information, previously unknown to them, of other crimes committed by the defendant and the identity of victims whose testimony might be used as proof, and that the effort of the police was successful. The evidence warranted those findings. The

Commonwealth in its brief states that "there is no suggestion that the third party was prompted by any official to make [the] disclosure" to the alleged victims' mother about the assaults. If that statement was meant to be an assertion that there was no evidence that the mother's friend was prompted by the police to tell the mother about the defendant's assaults against her children, we reject it. The judge clearly was warranted in finding that the police used promises and threats to stimulate the defendant to disclose crimes and victims' names for law enforcement purposes. As the judge observed, "[i]t was particularly shocking to learn from the officers' testimony that, although the defendant was encouraged to 'come clean' and to tell all, in fact, the longer a suspect has been involved in the sexual abuse of children, the *less* likely he is to be accepted into the program, and the more likely he is to be indicted" (emphasis in original). The evidence disclosed that, promptly after the defendant told the police about his abuse of the victims, in keeping with the police objectives, the mother's friend notified the mother about the incidents to which the defendant had confessed, and advised her to call the police. The judge was justified in concluding that that chain of events was other than coincidental.

We turn to a discussion of the applicable Federal law. It is well established that the exclusionary rule applies not only to the direct results of police misconduct but also to the "fruits" of official illegality. See *Wong Sun* v. *United States, supra* at 484. This broad exclusionary rule follows from the fact that "[t]he essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385, 392 (1920). Equally well-established precepts qualify this sweeping exclusionary principle, however. Thus, evidence is admissible if the government learns of it from a source independent of the illegality, *id.,* if the connection between the police misconduct and the discovery of the challenged evidence is "so attenuated as to dissipate the taint," *Nardone* v. *United States,* 308 U.S. 338, 341 (1939), or if the evidence would

inevitably have been discovered in the normal course of a legal police investigation, *Nix* v. *Williams,* 467 U.S. 431 (1984).

From *Wong Sun* v. *United States, supra* at 485-488, we learn that not only may physical materials obtained during or as a direct result of an unlawful invasion of a defendant's Fourth Amendment rights be barred from evidence, but evidence of visual and auditory observations made in such circumstances may be barred as well. The present case raises the question, not whether materials the government has acquired or observations its witnesses have made as a result of an unlawful intrusion are admissible, but rather whether the testimony of a witness discovered through the involuntary statement of a defendant is admissible. Our question is whether, in the circumstances of this case, the connection between the involuntary statement of March 23, 1985, and the acquisition of the witnesses' anticipated testimony is so attenuated that the exclusionary rule does not apply. The Commonwealth does not contend that the testimony is admissible because of the independent source or inevitable discovery qualifications of the exclusionary rule.

A similar question was presented to the Supreme Court in the case of *United States* v. *Ceccolini,* 435 U.S. 268 (1978), although, as we shall see, there is a critical distinction between that case and this one. *Ceccolini* concerned the testimony of a witness who was discovered as a result of an illegal search rather than, as here, an involuntary statement. However, we have not been made aware of a sufficient reason why a different attenuation analysis should apply under the Fifth Amendment to testimony acquired through an involuntary statement than applies under the Fourth Amendment to testimony acquired as a result of an illegal search. Indeed, the arguments of the parties are in large measure focused on the *Ceccolini* case and on the case of *Commonwealth* v. *Caso,* 377 Mass. 236 (1979), in which this court considered the admissibility of the testimony of a witness whose identity was disclosed to the police through an illegal wiretap.

In *United States* v. *Ceccolini, supra,* the witness's significance, although not her identity, was discovered as a result of

an unlawful search of the defendant's shop by a police officer
named Ronald Biro. After being interviewed by the police,
the witness testified against the defendant voluntarily. Nothing
acquired by Officer Biro in the course of his search was used
to obtain the witness's cooperation. *Id.* at 279. Furthermore,
there was "not the slightest evidence to suggest that Biro entered
the shop or picked up the envelope with the intent of finding
[relevant] tangible evidence . . . , much less any suggestion
that he entered the shop and searched with the intent of finding
a willing and knowledgeable witness to testify against respond-
ent." *Id.* at 279-280. Given those facts, and in view of the
balance to be struck between protecting constitutional rights
by deterring official misconduct, on the one hand and, on the
other hand, "encroach[ing] upon the public interest in pros-
ecuting those accused of crime and having them acquitted or
convicted on the basis of all the evidence which exposes the
truth," *id.* at 275-276, the Court concluded that the exclusionary
rule ought not apply to the witness's testimony. *Id.* at 280.

The Court in *Ceccolini* reasoned that the basic purpose of
the exclusionary rule, deterrence of official misconduct, would
not be served by application of the rule in the circumstances
of that case. Although the Court considered several factors,
two considerations were predominant in the Court's rationale.
The first of these was the willingness of the witness to testify.
The Court observed: "The greater the willingness of the witness
to freely testify, the greater the likelihood that he or she will
be discovered by legal means and, concomitantly, the smaller
the incentive to conduct an illegal search to discover the wit-
ness." *Id.* at 276. The Court's other predominant consideration
was that "[a]pplication of the exclusionary rule . . . could not
have the slightest deterrent effect on the behavior of an officer
such as Biro [whose unlawful search was not made for the
purpose of discovering evidence or the identity of a witness].
The cost of permanently silencing [the witness] is too great
for an evenhanded system of law enforcement to bear in order
to secure such a speculative and very likely negligible deterrent
effect." *Id.* at 280.

The Court's reasoning in *Ceccolini* appears to contain the implicit assumption that, if an unlawfully discovered witness turns out to be willing to testify, the police would have been able to predict at an earlier time that without police intervention the witness would not only testify voluntarily on request but would voluntarily come forward as well. The police, then, would not be motivated to engage in illegal activity for the specific purpose of discovering the witness and securing the witness's testimony. Deterrence of purposeful police misconduct thus would be unnecessary.[1] We need not evaluate the Court's reasoning, because it is sufficient for our purposes that in the present case, despite having found that the witnesses, as things developed, were willing to testify, the judge also found on adequate evidence that the police obtained the defendant's involuntary statement for the very purpose of discovering the defendant's crimes and witnesses to testify to them. In this case, therefore, unlike in *Ceccolini,* and unlike in *Commonwealth* v. *Caso, supra,* where there was no suggestion that the illegal wiretap was designed to discover witnesses, the willingness of the witnesses to testify permits neither an inference nor an assumption that the police conduct was not purposeful. The purposeful conduct forcefully suggests that the police did not think that the witnesses would come forward and testify voluntarily. In this case, therefore, legitimate concerns for deterrence compel the application of the exclusionary rule to the children's testimony.

As the Court in *Ceccolini* noted, "Of course, the analysis might be different where the search was conducted by the police for the specific purpose of discovering potential witnesses." *Id.* at 276 n.4. We are persuaded that the attenuation

---

[1] Focusing on this part of the Court's reasoning in *Ceccolini,* Justice Marshall, with whom Justice Brennan joined, dissenting, said, "The somewhat incredible premise . . . is that the police in fact refrain from illegal behavior in which they would otherwise engage because they know in advance both that a witness will be willing to testify and that he or she 'will be discovered by legal means.' [*Id.* at 276]. This reasoning surely reverses the normal sequence of events; the instances must be very few in which a witness' willingness to testify is known before he or she is discovered." *Id.* at 288.

analysis not only might be different but must be different in a case such as this, where the issue is the admissibility of the expected testimony of witnesses whose identity the police purposefully discovered by taking an involuntary statement from the defendant. "[S]urely the exclusionary rule should not be withheld as to the very kind of evidence which motivated the [taking of the statement]." W.R. LaFave, Search and Seizure § 11.4, at 673 (1978). We hold that in this case the link between the defendant's involuntary statement and the children's expected testimony is so close that to permit the Commonwealth to use the testimony at a trial of the defendant would defeat the exclusionary rule's purpose to protect constitutionally guaranteed rights and privileges. Therefore, we affirm the order suppressing the children's testimony.

*So ordered.*