NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11253

COMMONWEALTH  vs.  DERYCK LONG.


Norfolk.     October 11, 2016. - February 24, 2017.

Present:  Gants, C.J., Hines, Gaziano, Lowy, & Budd, JJ.


Homicide.  Constitutional Law, Assistance of counsel.  Evidence,
    Exculpatory, Wiretap, Result of illegal search.  Cellular
    Telephone.  Electronic Surveillance.  Practice, Criminal,
    Capital case, Assistance of counsel.



    Indictments found and returned in the Superior Court
Department on March 9, 2006.

    Pretrial motions to suppress evidence were heard by Janet
L. Sanders, J.; the cases were tried before Kenneth J. Fishman,
J., and a motion for a new trial, filed on August 4, 2014, was
heard by him.


    Robert F. Shaw, Jr., for the defendant.
    Pamela Alford, Assistant District Attorney (Craig F.
Kowalski, Assistant District Attorney, also present) for the
Commonwealth.


    GAZIANO, J.  A Superior Court jury found the defendant

guilty of murder in the first degree, on a theory of deliberate

premeditation, in the shooting death of Jamal Vaughn (victim) on

January 9, 2016, in Quincy. Before us is the defendant's appeal from his convictions and from the denial of his motion for a new trial. He claims that his trial counsel's uninformed decision not to introduce cell site location information (CSLI) to contradict the testimony of a key prosecution witness constituted ineffective assistance of counsel, and that it was error for a motion judge to deny his pretrial motion to suppress the testimony of the same witness because the Commonwealth had obtained his testimony as a result of an illegal wiretap that this court previously had ordered suppressed. See Commonwealth v. Long, 454 Mass. 542 (2009).

We conclude that the defendant was not deprived of the effective assistance of trial counsel, and that there was no error in the motion judge's determination that the witness's testimony was sufficiently attenuated from the suppressed wiretap evidence to dissipate the taint of illegality. Accordingly, we affirm the conviction and the denial of the motion for a new trial, and decline to exercise our authority under G. L. c. 278, § 33E, to disturb the verdict.

1. Facts. We recite the facts that the jury could have found, reserving certain facts for our analysis of the particular issues.

From late 2005 to early 2006, the defendant would frequently stay with his girl friend, Janet Ojo, at her house on

Franklin Street in Quincy.  About two weeks before the shooting, the defendant and Ojo got into a dispute over money and she ended the relationship.

On the evening of January 9, 2006, the defendant asked Courtney Forde to drive him to Ojo's house to pick up some belongings that he had left behind.  Forde picked the defendant up in his minivan.  He also brought along his friend and drug dealing associate, Paul Brown, and a woman whom Forde had recently met.

When they arrived at Ojo's house, the defendant got out of the vehicle and went inside.  Ojo was not home, but the defendant encountered a few of her friends, including the victim.  The defendant and the victim got into a fistfight about some money that Ojo maintained the defendant had stolen from her.  The fight spilled outside to the front yard.  Brown got out of the minivan and attempted to tear off a door from a vehicle parked in the driveway.  Now outnumbered, the victim ran inside the house.  The defendant tried to re-enter the house and tossed a brick through one of the windows.

The defendant and Brown got back into the minivan and Forde drove a short distance down the street, then stopped the vehicle because the defendant had remembered that he had left some "IDs" behind in a shoebox.  Forde, the defendant, and Brown walked

back to the house. The victim was outside and ran back into the house when he saw the three approaching.

Forde drove back to Boston. Along the way, he dropped off the unnamed woman in Milton. Forde stopped at the house in the Mattapan section of Boston where the defendant was staying at that time, and the defendant was able to find his keys to Ojo's house. Forde, the defendant, and Brown returned there. This time, nobody was home. The three entered using the defendant's keys and took numerous items, some belonging to the defendant and some belonging to Ojo, including women's clothes, food, and electronics. They also took two handguns stored in a shoebox, a revolver and a "rusty" Tec-9 semiautomatic pistol. The defendant put the revolver "on his waist."

The defendant then directed Forde to drive to an apartment building on Willard Street in Quincy, where, Forde knew, the defendant had stayed with Ojo in the past. As they approached the building, Forde called two of his drug customers, who lived there. He intended to ask one of them to open the back door so that the defendant could enter the building. Neither answered.

Forde backed the minivan into a dimly-lit spot near some trees, far from the entrance to the building. At the same time, the victim left the building to retrieve a package of cigarettes from his vehicle. The defendant and Brown got out of Forde's

vehicle, walked quickly over to the victim, and shot him several times.[1]

At around midnight, a neighbor at the Willard Street building telephoned 911 to report hearing gunshots. Police and emergency services responded to the scene, where they discovered the victim with three gunshot wounds. He was transported to a hospital where he was pronounced dead.

Police recovered two spent projectiles, fired from two different weapons, from the victim's body, and seven shell casings, all of which came from the same nine millimeter pistol. They also found on the ground near the victim's jacket a spent projectile that was "mostly" consistent with having been shot from a revolver.

After the shooting, Forde drove to back to his house in Boston from Quincy. Forde then went to the house of one of his friends, where the three men unloaded all of the items taken from Ojo's house, including a shoebox containing a rusty firearm and its magazine.

2. Discussion. a. Ineffective assistance of counsel. The defendant argues, as he did in his motion for a new trial, that his trial counsel was constitutionally ineffective. He contends that counsel should have introduced CSLI evidence to

---

[1] The Commonwealth charged Brown with the victim's murder, and he was acquitted in a separate trial.

challenge the testimony of Forde, who testified pursuant to a plea agreement, concerning his whereabouts during a specific period of time near the time of the shooting. The defendant also maintains that counsel failed to investigate, and did not understand, the significance of the CSLI evidence.[2]

In reviewing a claim of ineffective assistance in a case of murder in the first degree, we apply the more favorable standard of review of a substantial likelihood of a miscarriage justice, pursuant to G. L. c. 233, § 33E. See Commonwealth v. Vargas, 475 Mass. 338, 358 (2016). Under this standard, "[w]e consider whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." Id., quoting Commonwealth v. Lessieur, 472 Mass. 317, 327, cert. denied, 136 S. Ct. 418 (2015). Where the defendant's ineffective assistance claim is based on a tactical or strategic decision, we apply the more rigorous standard that, to be ineffective, the attorney's decision must have been "manifestly unreasonable." Commonwealth v. Lang, 473 Mass. 1, 14 (2015).

i. Failure to introduce exculpatory CSLI evidence. The defendant argues that portions of the CSLI evidence that was not

_____

[2] The CSLI evidence was based on records from Forde's cellular telephone and the cellular telephone carried by Forde's girl friend.

introduced at trial would have served to challenge, and discredit, a portion of Forde's testimony about his actions following the confrontation with the victim at the Franklin Street residence, and before the return there later that evening. He contests the accuracy of Forde's testimony that he and the defendant left Franklin Street, traveled to Mattapan for a brief period of time, and then returned to Franklin Street, without mentioning any stops along the way, particularly other stops in Mattapan and the Dorchester section of Boston. The defendant points to CSLI evidence showing that Forde's telephone was absent from Quincy for more than one hour, and traveled to several locations in Mattapan and Dorchester during that time frame.[3] He argues that trial counsel was ineffective because he

---

[3] Cell site location information (CSLI) is "a cellular telephone service record or records that contain information identifying the base station towers and sectors that receive transmissions from a [cellular] telephone" (quotations and citation omitted). Commonwealth v. Augustine, 467 Mass. 230, 231 n.1 (2014), S.C., 470 Mass. 837 and 472 Mass. 448 (2015). "'Historical' CSLI refers to CSLI relating to and generated by cellular telephone use that has 'already occurred at the time of the order authorizing the disclosure of such data'" (citation omitted). Id. These records are not usable for real-time tracking. In general, records of the specific tower which received a cellular telephone transmission at a given time can be used to provide a rough geographic location of that telephone at that time, within the transmission range of that tower. Id. at 233. See Commonwealth v. Gonzalez, 475 Mass. 396, 412 & n.37 (2016)("data from a single cell phone tower" is not adequate to place caller within specific range of distance from that tower; in some circumstances, transmissions are not from tower that is geographically closest to location of given cellular telephone).

failed to introduce this independent evidence to discredit Forde's testimony.

The judge determined that, while Forde's credibility "was an essential issue for the jury" because of his "indisputably critical" role in the Commonwealth's case, the defendant failed to establish that the decision not to use the CSLI was manifestly unreasonable. The judge noted that the CSLI was a double-edged sword that both called into question Forde's earlier timeline and placed the defendant at the scene of the shooting. In addition, the judge concluded that trial counsel effectively challenged Forde's credibility through rigorous cross-examination.

We afford particular deference to a decision on a motion for a new trial where the motion judge was also the trial judge, see Commonwealth v. Forte, 469 Mass. 469, 488 (2014), and discern no abuse of discretion in this case. The CSLI evidence did not materially impeach Forde's trial testimony. Forde did not specify how long he, the defendant, and Brown were in Boston between the two trips to Quincy. He testified, without providing any time frame, that they left Franklin Street, went to Milton to drop off the woman who had been with them, went to the house where the defendant was staying in Mattapan where the defendant went inside for five minutes to get his keys, from there went to a liquor store, and then drove back to Quincy.

Forde's cellular telephone, according to the CSLI evidence, was in Quincy at 9:48 P.M.; Mattapan and Dorchester from 10:17 through 10:45 P.M.; and again in Quincy or Braintree from 11:19 P.M. until at least 11:52 P.M.. Police received the 911 call concerning shots fired in Quincy at 11:55 P.M. The CSLI evidence thus contains a period of approximately twenty to twenty-five minutes that Forde did not describe during his trial testimony.[4]

The CSLI evidence may have cast some doubt on Forde's testimony concerning his whereabouts in Boston during that discrete time period. The problem with the evidence, however, is that it corroborated Forde's testimony that he drove the defendant from Boston to Quincy at the time of the shooting. Thus, it was not manifestly unreasonable for trial counsel to decline to introduce evidence placing his client at the scene of the crime.

Trial counsel was able to challenge Forde's testimony in a number of other ways, none of which carried the risk of

---

[4] The defendant also argues that the CSLI evidence demonstrates that Forde was in contact with his girl friend, during this critical time frame and that his girl friend, who traveled from Boston to Quincy, coordinated her activities with Forde. The CSLI evidence did not directly contradict Forde. Forde did not offer any testimony on the subject of telephoning his girl friend during his trips back and forth to Quincy. Moreover, the CSLI evidence did not contradict Forde's testimony that he met up with his girl friend sometime later in the evening.

corroborating Forde's testimony that he and the defendant had been in Quincy at the time of the shooting.  See generally Commonwealth v. Grenier, 415 Mass. 680, 685-687 (1993).  Trial counsel cross-examined Forde about his plea agreement, his occupation as a drug dealer, a prior incident in which he had shot at someone, his infidelity to his then girl friend, the care he took when loading his gun to make sure that his fingerprints were not on the bullets so that they could not be traced, and his extensive criminal record.

Trial counsel also rigorously cross-examined Forde on inconsistencies between the version of events that he initially told police and his testimony at trial.[5]  See Commonwealth v. Valentin, 470 Mass. 186, 191 (2014) (counsel not ineffective in failing to cross-examine witness concerning particular statement

---

[5] Initially, Forde did not tell police that he had smoked marijuana on the night of the shooting, but admitted on cross-examination that he had smoked marijuana and consumed alcohol that night.

Forde also testified that the guns that they took from Ojo's house were a Tec-9 pistol and a .38 revolver.  On cross-examination, Forde admitted that he initially told police that the two guns the men found at Ojo's house were a Tec-9 pistol and a ".357."  In his closing, counsel argued that Forde had changed his story to fit the ballistics report, a further indication that he was lying.

Forde testified further that he had never been to the Franklin Street house prior to the night of the shooting.  On cross-examination, however, Forde admitted that he had told State police that he had been to the Franklin Street house on prior occasions before the evening of the shooting.

where counsel otherwise "conducted a thorough impeachment" of witness through cross-examination).

In his closing argument, trial counsel pointed to a number of reasons why the jury should not believe Forde. He told the jury, "You have to look at Courtney Forde's testimony in the context of that deal . . . the deal of a lifetime . . . [whereby] Mr. Forde goes from [a] potential sentence of life in prison to walking away." He reminded the jury of Forde's testimony that when the victim walked across the parking lot at the Willard Street building, Forde did not recognize him. "Most crucially, he told us, from that witness stand[,] under oath[,] he did not recognize the man at Willard Street[.] [H]e didn't recognize him as the man that had been fighting with [the defendant]."

ii. Failure to investigate. The defendant argues that his trial counsel did not investigate properly the use of CSLI evidence, and did not understand its importance.

The duty to investigate is one of the foundations of the effective assistance of counsel, because counsel's strategic decisions can be adequate only if counsel is sufficiently informed about the available options. See Strickland v. Washington, 466 U.S. 668, 680 (1984) ("[T]he Sixth Amendment [to the United States Constitution] imposes on counsel a duty to investigate, because reasonably effective assistance must be

based on professional decisions and informed legal choices can be made only after investigation of options").  Trial counsel must conduct a reasonable investigation into possible defenses, even if counsel ultimately does not pursue those defenses at trial.  See Commonwealth v. Alvarez, 433 Mass. 93, 102 (2000) (trial counsel ineffective for failing to fully examine defendant's mental health records, which corroborated defendant's testimony about her own mental health history, and therefore would have aided in establishing defense of lack of criminal responsibility defense).  Nonetheless, "[w]hile counsel certainly has 'a duty to make reasonable investigations,' counsel is also afforded the opportunity to 'make a reasonable decision that makes particular investigations unnecessary.'" Commonwealth v. Denis, 442 Mass. 617, 629 (2004), quoting Strickland, 466 U.S. at 691.  "[S]trategic choices made after less than complete investigation are reasonable [only] to the extent that reasonable professional judgments support the limitation on investigation."  Commonwealth v. Baker, 440 Mass. 519, 529 (2003), quoting Strickland, supra at 690-691.

Here, the motion judge concluded that defense counsel conducted an adequate investigation of the CSLI evidence. According to an affidavit that the judge credited, defense counsel obtained the CSLI records and was aware that a telecommunications expert had testified at Brown's trial.

Counsel had a general understanding of that testimony, but was unaware of the specific details. He included the expert's name on his list of possible witnesses, but believed that his testimony would not be necessary to impeach Forde's credibility. Counsel ultimately decided not to present the CSLI evidence through the expert witness "because, at the time [he] sincerely believed that [his] cross-examination of Courtney Forde had gone well and that [Forde] would not and could not be believed by the jury."

Given this, there was no abuse of discretion in the judge's determination that defense counsel appreciated the value of the CSLI evidence and, as the trial progressed, continued to gauge the usefulness of this evidence. That the defense strategy did not achieve an acquittal does not, in hindsight, thereby render defense counsel's strategic decision ineffective assistance of counsel. See Commonwealth v. Kolenovic, 471 Mass. 664, 674-675 (2015) (no ineffective assistance where defense counsel made strategic decision to pursue specific trial strategy, unless decision was manifestly unreasonable); Commonwealth v. Haley, 413 Mass. 770, 777-778 (1992).

b. Denial of motion to suppress. The defendant's second claim of error is that the judge who ruled on his motion to suppress erred in denying that motion and allowing the

introduction of Forde's testimony, because it was the product of an illegal wiretap.

i. Background. On January 20, 2006, the Commonwealth obtained a warrant authorizing the placement of a wiretap on a booth in the visiting room at the Norfolk County house of correction in order to monitor conversations between the defendant and his visitors. As a result of the wiretap recordings, police identified another witness, Gillian Gibbs, and obtained more information on Forde's involvement in the shooting.

The defendant filed a motion to suppress the intercepted conversations, arguing that the wiretap was not authorized under G. L. c. 272, § 99. A Superior Court judge, who was not the trial judge, allowed the motion. She concluded that the wiretap did not meet the requirements of G. L. c. 272, § 99, because the Commonwealth failed to establish that the offense under investigation was committed in connection with "organized crime." A single justice of this court allowed the Commonwealth's application to pursue an interlocutory appeal to this court, and we affirmed the Superior Court judge's decision. See Long, 454 Mass. at 550, 554-558.

After an evidentiary hearing to determine the scope of the evidence to be suppressed, the motion judge excluded the recording of the conversation between the defendant and Gibbs,

and any testimony by Gibbs.  The judge found that Gibbs's decision to speak with police was directly motivated by the fact that they confronted her with the wiretap evidence.  The judge did not, however, order that any testimony by Forde be suppressed.  To the contrary, she concluded that Forde's decision to testify was sufficiently attenuated from the unlawful wiretap so as to dissipate the taint of illegality.

The motion judge found the following.  See Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  Police arrested the defendant on January 10, 2006.  The physical evidence, however, pointed to two shooters:  a surveillance video recording from a nearby store showed two distinct muzzle flashes, and projectiles recovered from the victim's body came from two different weapons.  One of the investigators listened to the defendant's recorded telephone calls from the house of correction in an effort to identify the second shooter.  In one of these conversations, the defendant spoke to "C," who said that he was "laying low."  The defendant told "C" to "fall back . . . way back."  Police developed information that "C," also known as "Casino," had been with the defendant earlier in the evening on January 9, 2006, and had made cellular telephone calls to individuals at the Willard Street address immediately before the shooting, but were unable to identify "C."

Police then obtained a warrant for a wiretap of one of the internal telephones used to communicate between visitors and inmates at the house of correction.  This wiretap enabled police to listen to a conversation between the defendant and Gibbs.  In that conversation, the defendant and Gibbs mentioned "C," in a manner such that police believed "C" was Forde.  Police met with an assistant district attorney, who issued a summons for Gibbs to appear before the grand jury.  Police interviewed Gibbs before she appeared and testified.  She said that Forde had told her that he had driven the defendant to the Willard Street address on the evening of the shooting, where the defendant got out and Forde "saw sparks."  Gibbs later said that she would not have told the police about Forde's statements if they had not told her that they had listened to her jailhouse conversation with the defendant.  Right after Gibbs appeared before the grand jury, police obtained a warrant to arrest Forde.  The affidavit in support of the application for the warrant is five pages long, and contains no mention of the wiretap.  The information that Gibbs provided to the grand jury is mentioned in a single paragraph.

In March, 2006, Forde was arrested on the warrant.  He was held without bail pending trial, and declined to speak with police.  In August, 2006, Forde changed his mind and decided to speak with police.  He told them about Brown's and the

defendant's involvement in the events of January 9 of that year. Forde said that he had changed his mind about testifying against the defendant and Brown because the defendant had sent him a number of threatening letters and Brown had broken a previous agreement in which he was to continue selling drugs and giving some of the money to Forde.

In November, 2006, Forde testified before the grand jury about the events on the evening of January 9, 2006.  Following this testimony, the district attorney offered him a plea agreement under which Forde was to receive a sentence of eight months of incarceration (the amount of time he already had served), followed by a term of probation on the lesser included charge of accessory after the fact, and the Commonwealth agreed to enter a nolle prosequi on the murder charge after he testified.

In denying the defendant's motion to suppress Forde's testimony, the motion judge determined that, although Forde decided to testify after the unlawful wiretap, his decision was sufficiently attenuated from the unlawful activity so as to dissipate the taint of illegality.  The judge credited the testimony of a State trooper that Forde likely would have been charged in conjunction with the shooting, regardless of the wiretap, and therefore determined that "the evidence does not support the conclusion that the decision to arrest Forde was

solely in order to gain his cooperation."  She also credited Forde's testimony that he chose to speak with the police, not based on his knowledge of the wiretap, but as a result of his belief that the defendant and Brown had "disrespected" him.

ii.  Exclusionary rule and attenuation exception.  Under the doctrine of the "fruit of the poisonous tree," evidence seized as a result of an illegal wiretap, even where the defendant was not the direct target of the wiretap, generally may not be admitted at trial.  See Commonwealth v. Damiano, 444 Mass. 444, 453 (2005), citing Wong Sun v. United States, 371 U.S. 471, 487-488 (1963).  The primary purpose for the suppression of evidence under the exclusionary rule is to deter unlawful searches and seizures.  Commonwealth v. Lora, 451 Mass. 425, 438 (2008).  "The rule is calculated to prevent, not to repair.  Its purpose is to deter -- to compel respect for the constitutional guaranty in the only effectively available way -- by removing the incentive to disregard it."  United States v. Calandra, 414 U.S. 338, 347 (1974), quoting Elkins v. United States, 364 U.S. 206, 217 (1960).  The exclusionary rule also functions to "preserve judicial integrity by disassociating the courts from unlawful [police] conduct."  Commonwealth v. Nelson, 460 Mass. 564, 570-571 (2011).

The attenuation doctrine provides an exception to the exclusionary rule under which evidence obtained by police as a

result of an unlawful search need not be excluded if the connection between the illegal search and the evidence is so attenuated as to dissipate any taint of illegality. Commonwealth v. Fredette, 396 Mass. 455, 458-463 (1985). The theory of dissipation of the taint attempts to determine the point of diminishing returns at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its costs. See United States v. Ceccolini, 435 U.S. 268, 275 (1978), and cases cited; Damiano, 444 Mass. at 453-454; Commonwealth v. Sylvia, 380 Mass. 180, 183 (1980).

To determine whether evidence that is discovered after an illegal search is sufficiently attenuated from that search so as to dissipate the taint, the court considers the length of time between the unlawful search and the discovery of the evidence (temporal attenuation); whether any circumstances intervened between the illegal act and the discovery of the evidence (intervening circumstances); and how integral the unlawful search was to the acquisition of the evidence (purpose and flagrancy of the unlawful conduct). Fredette, 396 Mass. at 460. The burden is on the Commonwealth to establish that the taint has been sufficiently attenuated. Damiano, 444 Mass. at 454, citing Fredette, supra at 459.

The defendant maintains that Forde's testimony should have been suppressed because, but for the illegal wiretap, the Commonwealth would not have had enough information to arrest him, and therefore Forde would not have been compelled to tell police what he knew in exchange for his release. We do not apply a "but for" test in determining whether to suppress testimony obtained after an unlawful search. Commonwealth v. Caso, 377 Mass. 236, 240 (1979). Commonwealth v. Suters, 90 Mass. App. Ct. 449, 458 (2016). Instead, we consider the above-noted three factors (temporal attenuation, intervening circumstances, and the purpose and flagrancy of the unlawful conduct) to determine "whether . . . the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (citation omitted). Wong Sun, 371 U.S. at 488. Damiano, 444 Mass. at 453. Here, the factors support a determination that Forde's decision to testify was sufficiently attenuated from the illegal wiretap to dissipate any taint from the illegality.

As to attenuation of time, in some circumstances, a lapse of time of as little as three hours from the illegal search to the decision to speak with police may be enough to dissipate the taint. See Commonwealth v. Fielding, 371 Mass. 97, 114 (1976). See also Commonwealth v. Gallant, 381 Mass. 465, 466-467, 470 (1980) (lapse of mere minutes between defendant's unlawful

arrest and decision to make statement, when considered in conjunction with other factors, was sufficient to dissipate taint). In the circumstances here, however, the judge found that Forde's decision to speak to police seven months after the illegal wiretap, and five months after his arrest, weighed in favor of attenuation. See Fielding, supra. The five-month period between Forde's arrest and his decision to testify made it more likely that his decision to testify was an independent, free choice, and not a result of the unlawful wiretap or the arrest that followed. Id.

As to the existence of intervening circumstances, if a witness's decision to testify involves an affirmative choice, that choice may be an intervening circumstance sufficient to dissipate the taint of illegality. Caso, 377 Mass. at 241 ("[A] truly voluntary decision by a witness to testify should not be overridden unless the extreme circumstances of a particular case require the suppression of the testimony as a deterrent to . . . the unlawful conduct which resulted in the discovery of the witness"). See Commonwealth v. Lahti, 398 Mass. 829, 833-836 (1986), cert. denied, 481 U.S. 1017 (1987) (no attenuation where judge found close connection between defendant's involuntary statement and acquisition of witness testimony).

In this case, the motion judge found that Forde's decision to testify, as Forde himself testified, was not based on

anything stemming from the illegal wiretap evidence. Rather, his decision was based on the conduct of his accomplices. He testified that he decided to speak with police because the defendant and Brown had "disrespected" him. See Caso, 377 Mass. at 243 (examining whether witness's decision to testify was act of free will).

As to the purpose and flagrancy of the illegal search, we ask, first, whether the police performed the illegal act for the purpose of obtaining the evidence that the defendant seeks to suppress, and second, whether the police knew that their actions were illegal but proceeded anyway (flagrancy). See Lahti, 398 Mass. at 833; Commonwealth v. Parham, 390 Mass. 833, 843 (1984).

Where police did not confront the witness with the illegally obtained evidence in order to coerce that witness to testify, this factor weighs in favor of allowing the testimony. See, e.g., Commonwealth v. Estabrook, 472 Mass. 852, 860-865 (2015). This is so even where the witness knew of the illegally obtained evidence. See Parham, 390 Mass. at 843-844 (defendant's confession not suppressed notwithstanding his knowledge of codefendant's illegally-obtained confession, because police had not confronted him with that statement). Similarly, we have declined to suppress a defendant's statement, made after an illegal arrest, where the police did not make the

illegal arrest for the purpose of obtaining the statement. See Fielding, 371 Mass. at 114.

Because the police did not conduct the illegal wiretap with the purpose of obtaining Forde's testimony, and did not confront Forde with the wiretapped conversations, the motion judge properly determined that the purpose and flagrancy of the illegal wiretap was sufficiently attenuated from Forde's decision to testify as to dissipate the taint of illegality. See Estabrook, 472 Mass. at 860-865; Caso, 377 Mass. at 241. In this light, Forde's decision to testify stands in stark contrast to Gibbs's decision to testify, which was made as a direct result of being confronted with the illegal wiretap evidence. Police did not confront Forde directly or indirectly with the illegally wiretapped conversation in order to induce him to testify. In short, police did not use information from the illegal wiretap to arrest and hold Forde in the house of correction in order to exert pressure on him to strike a deal.

We conclude, therefore, that there was no error in the judge's determination that the taint of the illegal wiretap was sufficiently attenuated as to allow Forde's testimony to be introduced at trial.

c. Review pursuant to G. L. c. 278, § 33E. We have reviewed the record pursuant to our obligation under G. L.

c. 278, § 33E, and discern no reason to reduce the verdict or order a new trial.

            <u>Judgment affirmed</u>.

            <u>Order denying defendant's motion for a new trial affirmed</u>.