NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-332

COMMONWEALTH

vs.

JONATHAN LOPEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court on two counts of aggravated rape of a child, G. L. c. 265, § 23A, and three counts of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B, a panel of this court affirmed the defendant's judgments of conviction in an unpublished decision. See Commonwealth v. Lopez, 91 Mass. App. Ct. 1113 (2017). Three years later, the defendant filed a motion for new trial, alleging that his appellate counsel was ineffective in not raising the issue of the admission at trial of a video recording of the booking process (booking video) which contained statements the defendant made to his girlfriend during a telephone call. The motion judge denied the defendant's motion

in a thorough sixteen-page decision.[1]  Concluding that appellate counsel's failure to challenge the admission of the booking video did not deprive the defendant of a substantial ground of defense, we affirm.

Background.[2]  On March 6, 2013, the defendant voluntarily went to the police station regarding allegations of sexual assault, where, after being read his Miranda rights, he was interrogated for over one hour.  During the questioning, a police officer informed the defendant, "You're not going to speak at trial.  Your attorney is going to do all the speaking for you.  He's going to cross-examine any witnesses that's brought against you . . . .  You then cannot say -- get up and stand -- 'I didn't do this.'  You can't stand up in court and yell in court, 'I didn't do this.'"

Subsequent to the statements of the police officer, the defendant admitted during the interrogation that the victim had given him oral sex.  After the defendant's confession, he was arrested and placed in a holding cell, by himself, for over an hour.  The defendant was then booked and provided his Miranda rights again and his right to make a telephone call.  The

---

[1] As the trial judge retired before briefing on the motion was complete, the motion was assigned to a different judge.
[2] We recount relevant facts from the videotapes of the interrogation and phone call, each of which we viewed and listened to, and from the judge's decision on the motion for a new trial.

2

defendant then called his girlfriend.  The call was videotaped,
but only his part of the telephone call can be heard.  The
defendant is heard to say, "I have no bail [and] I have court
tomorrow morning," and that "I need you to call . . . my boss."
He then says, "I fucked up . . .  She gave me oral sex about a
year and a half ago . . .  I never forced her or anything like
that."  He subsequently states, "I'm sorry . . . calm down
please . . .  I'm sorry."  He tells the girlfriend, "I made a
mistake, I fucked up."  Finally, toward the end of the
conversation he said, "she's trying to say I raped her and I
didn't do that."

At trial, the prosecutor did not introduce the
interrogation "out of an abundance of caution" because of the
police officer's interrogation techniques.  However, after a
full hearing and over defense counsel's objection, the
Commonwealth was allowed to introduce the defendant's statements
to his girlfriend on the telephone.[3]  Appellate counsel did not
raise the issue of the admission of those statements in the
defendant's direct appeal.

Discussion.  Because a challenge to the trial judge's
decision to allow the booking telephone call into evidence would
not have been clearly more likely to result in reversal on

---

[3] The trial judge viewed the interrogation and booking videos, as
have we.  The interrogation video was marked for identification.

3

appeal, the defendant has failed to show that appellate counsel was ineffective. Appellate counsel cannot be faulted for not raising a claim that was unlikely to succeed on appeal. Thus, the motion for a new trial was properly denied.

"A defendant has a heavy burden to establish ineffective assistance of counsel sufficient to warrant a new trial." Commonwealth v. Lao, 450 Mass. 215, 221 (2007), S.C., 460 Mass. 12 (2011). The defendant must show not only that counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer," but also that his conduct "likely deprived the defendant of an otherwise available, substantial ground of defen[s]e." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). See Commonwealth v. Sowell, 34 Mass. App. Ct. 229, 231-232 (1993) (same standard applies for ineffective assistance of both trial and appellate counsel).

> "The review of such contentions has been described as requiring a determination 'whether the issues which [the defendant] claims appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial, and were so obvious from the trial record that the failure to present such issues amounted to ineffective assistance of appellate counsel.'"

Id. at 232, quoting Gray v. Greer, 800 F.2d 644, 647 (7th Cir. 1986).

1. Voluntariness. The defendant argues that because of the assertedly coercive techniques used by the police officer during his interrogation, any subsequent statements he made were

4

involuntary. "A voluntary statement is one that is the product of a rational intellect and a free will, and not induced by physical or psychological coercion." Commonwealth v. Libby, 472 Mass. 37, 41 (2015), quoting Commonwealth v. Molina, 467 Mass. 65, 75 (2014). Even if an initial confession is found to be involuntary due to police misconduct, subsequent confessions are not automatically tainted and thus involuntary. See Commonwealth v. Mahnke, 368 Mass. 662, 681 (1975), cert. denied, 425 U.S. 959 (1976).

We assume without deciding, as did the motion judge, that aspects of the police interview were coercive. "[E]ach case must be examined in light of three factors: the temporal proximity of the [misconduct] to the obtaining of the evidence; the presence of intervening circumstances; and the purpose and flagrancy of the misconduct." Commonwealth v. Fredette, 396 Mass. 455, 460 (1985). In assessing these factors, "[w]e do not apply a 'but for' test," but rather, we consider "whether . . . the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (citations omitted). Commonwealth v. Long, 476 Mass. 526, 536-537 (2017). "The Commonwealth bears the burden of proving that evidence subsequently obtained is untainted." Fredette, supra at 459.

5

"We examine the first two factors 'in conjunction with each other.'" Commonwealth v. Jones, 95 Mass. App. Ct. 641, 649 (2019), quoting Commonwealth v. Damiano, 444 Mass 444, 455 (2005). The defendant's telephone call to his girlfriend was made at least an hour after his statement to the police.[4] During that entire time, the defendant was alone in a holding cell and had no contact with the police. Thereafter, during his booking, the defendant was again administered his Miranda rights, he stated he understood them, he was informed of his right to make a phone call, and he asked to make a call to his girlfriend. The decision to make the phone call, and what to say during the phone call, was not done at the officers' urging and was an affirmative choice of the defendant wholly independent from the police misconduct. See Long, 476 Mass. at 537; Commonwealth v. Maldonado, 55 Mass. App. Ct. 450, 454 (2002), S.C., 439 Mass. 460 (2003). See also Commonwealth v. Manning, 44 Mass. App. Ct. 695, 700 (1998) ("the taking of the defendant's photograph during the booking process was standard police procedure . . . and bore no relation to the purpose or validity of the arrest"). The statements made by the defendant to his girlfriend were

_____

[4] Without rejecting the parties' oral stipulation to a lapse of about an hour, we note that the time stamps on the booking video suggest that two hours and forty minutes elapsed between when the defendant was booked after his confession and when he made his telephone call.

6

attenuated from the earlier interrogation by both time and intervening circumstances, supporting the trial judge's finding that they were purged of the taint of any prior illegality. See Commonwealth v. Bradshaw, 385 Mass. 244, 258 (1982) (confession not tainted by illegal arrest where defendant was given Miranda warnings at least twice and over an hour elapsed before confession).

As to the purpose and flagrancy, "we ask, first, whether the police performed the illegal act for the purpose of obtaining the evidence that the defendant seeks to suppress, and second, whether the police knew that their actions were illegal but proceeded anyway (flagrancy)." Jones, 95 Mass. App. Ct. at 649. We discern no error in the trial judge's implicit determination that the actions of the officer during the interrogation did not amount to flagrant misconduct. We cannot conclude that the interview techniques had the purpose to bring about the later phone call, nor do we view the introduction in evidence of the phone call as "exploiting" any constitutional violation that may have occurred earlier.

No court has ever found the defendant's confession during his interrogation to be involuntary due to police misconduct. In fact, the trial judge viewed the interrogation video and stated that although she had not been asked to evaluate the voluntariness, she did not "think [the defendant] was frankly

7

coerced into making any statements and giving any answers during the interview" and that "most of [the officer's questioning] was unnecessary but it didn't in any way confuse or put pressure on the defendant."  Contrast Commonwealth v. Novo, 442 Mass. 262, 268-269 (2004) (confession tainted when "misrepresentation of [defendant]'s right to defend himself at trial, [was] repeated incessantly" [emphasis added]); Commonwealth v. Lugo, 102 Mass. App. Ct. 170, 181-182 (2023) (flagrant police misconduct where police department formal protocol authorized unconstitutional practice).  Although we acknowledge that the officer's interview techniques came close to, and may have crossed, constitutional lines, we do not view the use of those techniques as being as egregious as in any of the cases the defendant has relied on.[5]

---

[5] The defendant relies on Commonwealth v. Thomas, 469 Mass. 531, 542 (2014), where the Supreme Judicial Court declared that statements by police to a suspect telling them that they may be losing their chance to tell their side of the story to police officers was "improper where a suspect has invoked her right to counsel."  Here, the defendant did not invoke his right to counsel, and in fact explicitly waived that right at the beginning of the interrogation.  The defendant also relies on Commonwealth v. Harris, 468 Mass. 429, 436 (2014), for the contention that "the standard interrogation tactic of minimization is problematic."  However, the case goes on to say that "[u]se of the tactic by itself, however, does not compel the conclusion that a confession is involuntary" (citation omitted).  Id.  Lastly, the defendant cites Commonwealth v. Baye, 462 Mass. 246 (2012), as a case where minimization tactics, implied assurance of leniency, and now-or-never propositions by officers led to a statement that the court concluded was not freely and voluntarily made.  However, the facts in that case were much more egregious than the case at hand:  the officers interrogated the defendant for ten hours,

2. <u>Cat out of the bag</u>. The defendant also argues that the coercive techniques used to elicit his first confession caused him to "let the cat out of the bag," tainting the statements he made to his girlfriend on the telephone. Under a "cat-out-of-the-bag line of analysis,"

> "[a] subsequent statement is inadmissible as the direct product of an earlier coerced statement 'if, in giving the statement, the defendant was motivated by the belief that, after a prior coerced statement, his effort to withhold further information would be futile and he had nothing to lose by repetition or amplification of the earlier statements.'"

<u>Commonwealth</u> v. <u>Thomas</u>, 469 Mass. 531, 552 (2014), quoting <u>Mahnke</u>, 368 Mass. at 686. The presumption of taint

> "may be overcome by showing that either: (1) after the illegally obtained statement, there was a break in the stream of events that sufficiently insulated the post-<u>Miranda</u> statement from the tainted one; or (2) the illegally obtained statement did not incriminate the defendant, or, as it is more colloquially put, the cat was not out of the bag" (citation omitted).

<u>Thomas</u>, <u>supra</u> at 551. "[W]hether one or both lines of analysis is required before a confession is admitted turns on the facts of the case." <u>Commonwealth</u> v. <u>Prater</u>, 420 Mass. 569, 580 n.10 (1995). "The focus and ultimate goal of undertaking either or

_____

suggested that if the defendant "did not confess then and there, he would be charged with crimes more serious than those of which they thought him guilty," and dissuaded the defendant from speaking to an attorney when he expressed a desire to do so. <u>Id</u>. at 257.

9

both lines of analysis is a determination of the voluntariness of the later confession."  Id. at 581.

Here, as discussed above, we have determined the defendant's second statement was sufficiently attenuated from the first confession.  This case is similar to Prater, 420 Mass. at 582-584, where the Supreme Judicial Court held that suppression of the defendant's subsequent confession was not required where there was one and one-half hours between the defendant's first and second confessions, Miranda warnings were given to the defendant before the second confession, and the defendant's demeanor during the second confession showed that he was not motivated by a feeling that the cat was out of the bag, even though he said he had "nothing to lose."  In this case, as the motion judge observed, there was at least an hour between the interrogation and phone call where the defendant sat alone in a cell with no police contact, the defendant was given his Miranda warnings before the phone call, and the defendant willingly made the phone call for the purpose of asking his girlfriend to inform his boss that he would not be able to come into work, rather than out of the belief that "his effort to withhold further information would be futile and he had nothing to lose by repetition or amplification of the earlier statements," which would suggest he had previously let the cat out of the bag.  Thomas, 469 Mass. at 552, quoting Mahnke, 368

10

Mass. at 686. The booking video, which again we have viewed, also supports a conclusion that the defendant's statement to his girlfriend was voluntary. See Prater, supra at 584.

Therefore, because the defendant's second statement was sufficiently attenuated from the first confession, appellate counsel did not render constitutionally ineffective assistance by failing to challenge the admission of the phone call into evidence on direct appeal.[6]

Order denying motion for new trial affirmed.

By the Court (Sacks, Shin & D'Angelo, JJ.[7]),

Joseph F. Stanton

Clerk

Entered: July 11, 2023.

---

[6] Because we do not find the claim of ineffectiveness of appellate counsel meritorious, see supra, we conclude that the defendant failed to raise a substantial issue, see Commonwealth v. Chatman, 466 Mass. 327, 334 (2013), and so the motion judge did not abuse his discretion by failing to hold an evidentiary hearing. Nor did the trial judge's admission of the evidence and defense counsel's failure to challenge it on appeal result in a "substantial risk of a miscarriage of justice," for the reasons discussed supra.

[7] The panelists are listed in order of seniority.