## COMMONWEALTH *vs.* MALCOLM CARNES.

No. 10-P-1977.

Norfolk. February 9, 2012. - May 2, 2012.

Present: SIKORA, CARHART, & SULLIVAN, JJ.

*Homicide. Practice, Criminal,* Motion to suppress, Witness. *Constitutional Law,* Search and seizure. *Search and Seizure,* Container, Expectation of privacy, Exigent circumstances. *Evidence,* Expert opinion. *Abandoned Property. Witness,* Expert.

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress evidence discovered inside a backpack that the defendant discarded behind a shed while fleeing from the scene of a shooting through the back yard of a friend, where the motion judge properly concluded that the backpack had been abandoned, in that the defendant's act of hiding it in a friend's yard without establishing that he placed it in someone else's control while trying to avoid apprehension and while in possession of a handgun failed to evoke an objectively reasonable expectation of privacy [715-718]; and where, in any event, the police had probable cause and faced exigent circumstances that justified the warrantless search of the backpack [718-719].

At a criminal trial, there was no error in the admission of opinion testimony by a ballistics expert using the qualifying language "to a reasonable degree of certainty in the ballistics community." [719-720]

INDICTMENTS found and returned in the Superior Court Department on September 24, 2007.

A pretrial motion to suppress evidence was heard by *Elizabeth B. Donovan,* J.; and the case was tried before *John P. Connor, Jr.,* J.

*Robert L. Sheketoff* for the defendant.

*Alexei Tymoczko,* Assistant District Attorney (*Thomas Finigan,* Assistant District Attorney, with him) for the Commonwealth.

CARHART, J. After a jury trial in Superior Court on an indictment charging murder in the first degree, the defendant was convicted of the lesser included offense of murder in the second

degree. On appeal, he argues that the police illegally searched his backpack and, therefore, the motion judge erred when she denied his suppression motion. He also argues that the trial judge erred by permitting the ballistics expert to give an opinion beyond his field of expertise. We affirm.

1. *Motion to suppress.* We summarize the pertinent facts from the motion judge's findings, which are not disputed, "supplemented where appropriate by uncontroverted testimony from the suppression hearing." *Commonwealth* v. *Washington*, 449 Mass. 476, 477 (2007).

On June 27, 2007, at about 5:00 P.M., a seventeen year old male named Ezekiel Cuthbert was shot to death at the Mutual Gas Station at the intersection of North Main Street and June Street in Randolph. Detective Paul Smith[1] was among the officers who were dispatched to the scene. Arriving at about 5:30 P.M., Smith canvassed those present and learned that the suspect had fled in a northerly direction on North Main Street, then turned left and headed in a westerly direction on Stacey Street. Smith also obtained a description of the suspect.

At approximately 7:00 P.M., after having expanded the geographical area of the investigation based on interviews with individuals in the area, Smith spoke with two witnesses, a father and his young son, who lived on Waldo Street. Waldo Street parallels Stacey Street, to the north, and the rear border of the witnesses' back yard abuts a portion of the rear yard of two homes, numbered 15 and 17, respectively, on the more southerly Stacey Street. The son reported that at about 5:30 P.M., he saw a thin black male with a backpack, wearing a white tee shirt and dark shorts, run from behind the bushes at the rear of 17 Stacey Street to a shed in the back yard of 15 Stacey Street. The witness momentarily lost sight of the suspect as the suspect went behind the shed area, but he heard a noise like something had hit the shed. The suspect reappeared without the backpack, retraced his steps through the rear yard of 17 Stacey Street and continued in a northerly direction toward Waldo Street.

Smith went to the area behind the shed described by the witness. There, he saw an overgrowth of bushes and some debris

---

[1]The transcript of the motion to suppress hearing spells the witness's name as "Smith," while the transcript of the trial spells his name as "Smyth."

between the shed and the rear fence at 15 Stacey Street. A backpack was in the bushes among the debris. Smith unzipped it, and inside he saw a pink towel and the butt end of a firearm. He immediately summoned crime scene services. Officers from that unit arrived and photographed the backpack, removed it from behind the shed, and went through the contents and photographed them. In addition to the gun, police found an inhaler in the backpack.[2]

Shortly after finding the backpack, officers interviewed two residents of the 15 Stacey Street home, George Viveiros, Sr., and his teenage son, George Viveiros, Jr. The younger Viveiros told police that he was the defendant's best friend and that he had witnessed the shooting.

The defendant was arrested shortly after midnight at his grandparents' home in Boston.[3]

The Commonwealth argued at the motion hearing that the warrantless search was permitted because the defendant had abandoned the backpack. The motion judge agreed. In her written memorandum, she stated that the defendant "abandon[ed] his backpack by throwing it into the rear yard on another person['s property]," and therefore had "no standing to argue a violation of any constitutional rights."

On appeal, the defendant challenges the motion judge's ruling and argues that the search was proscribed by the Fourth Amendment to the Unites States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. To prevail under art. 14 the defendant must demonstrate that he has standing to contest the search and that he had an expectation of privacy in the area searched. *Commonwealth* v. *Williams*, 453 Mass. 203, 207-208 (2009). Here, there is no dispute that the defendant had a possessory interest in his backpack sufficient at

---

[2]The items retrieved from the backpack were tested for dexoyribonucleic acid (DNA) evidence. At trial the evidence showed that the defendant could not be excluded as a contributor to the mixture of DNA found on the backpack, or the towel, but the statistical link was weak. There was too little DNA recovered from the gun to make a comparison. The predominant profile of DNA obtained from the mouth piece of the inhaler matched the profile of the defendant.

[3]The defendant argued in his suppression motion that his arrest was illegal, but has not pressed that issue on appeal.

least to grant him standing.[4] Rather, we focus on "whether a search in the constitutional sense occurred." *Id.* at 208.

A search in the constitutional sense requires that the defendant must have had a subjective expectation of privacy in the item or place searched, and that such expectation must have been one that society recognizes as reasonable. See, e.g., *Commonwealth* v. *Pina*, 406 Mass. 540, 544, cert. denied, 498 U.S. 832 (1990); *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). "The defendant bears the burden of establishing both elements." *Commonwealth* v. *Montanez*, 410 Mass. at 301. Here, the judge's conclusion of abandonment requires us to consider whether the defendant manifested a subjective expectation of privacy in the place searched, and in the contents of his backpack, which "could be considered objectively reasonable or legitimate." *Commonwealth* v. *Straw*, 422 Mass. 756, 759 (1996). More particularly, abandonment is a question of intent, which may be inferred from words, behavior, and other objective facts. See generally *Commonwealth* v. *Paszko*, 391 Mass. 164, 184 (1984).

Because we conclude that the defendant's actions in discarding the backpack in the back yard of his best friend suggest a subjective expectation of privacy, we focus on whether the defendant's subjective expectation of privacy "could be considered objectively reasonable or legitimate." *Commonwealth* v. *Straw*, 422 Mass. at 759. First, we consider that the defendant concealed his backpack outside, in a back yard in which "by law, he . . . had no reasonable expectation of privacy." *Id.* at 761. He was neither the owner nor did he establish any right of control over the property. See *Rawlings* v. *Kentucky*, 448 U.S. 98, 105 (1980) (defendant put drugs in friend's purse over which he had no control or right to exclude others); *United States* v. *Hershenow*, 680 F.2d 847, 855-856 (1st Cir. 1982) (defendant had "no legal interest or even access rights" to the storage barn where he directed another to hide a box of incriminating evidence). See also *Commonwealth* v. *Williams*, 453 Mass. at 207-209 ("defendant lacked a reasonable expecta-

---

[4]"A defendant has standing either if [he] has a possessory interest in the place searched or in the property seized." *Commonwealth* v. *Williams*, 453 Mass. at 208.

tion of privacy in the basement area [of her mother's apartment building] in which she had deposited some possessions"); *United States* v. *Soto*, 779 F. Supp. 2d 208, 219 (D. Mass. 2011) (defendant had no legitimate expectation of privacy in computer's hard drive left in vehicle defendant obtained by fraud and turned over to third party; hard drive deemed abandoned). Contrast *Commonwealth* v. *Mubdi*, 456 Mass. 385, 391-394 (2010), citing with approval *Commonwealth* v. *Williams, supra.*

Second, the defendant's handling of the backpack did not evince a legitimate expectation of privacy. The very manner by which he threw it behind the shed contravenes any reasonable inference that he took normal precautions to maintain his privacy. See *Rawlings* v. *Kentucky*, 448 U.S. at 105 (putting drugs into a friend's purse does not evince a reasonable expectation of privacy); *United States* v. *Morgan*, 936 F.2d 1561, 1570-1571 (10th Cir. 1991), cert. denied, 502 U.S. 1102 (1992) (bag deemed abandoned where defendant " 'threw' the bag to the south side of the porch" of his friend's home, in a yard that was open and visible to passers-by). See also *State* v. *Kendall*, 173 Ore. App. 487, 491-493 (2001) (bicycle not abandoned when left outside house, as compared to a backpack; "more likely that a backpack left on the ground would be inspected than it would be for a vehicle"). Similarly, there is no evidence that the defendant left the item to the care or responsibility of another. See *United States* v. *Morgan*, 936 F.2d at 1570-1571. Contrast *Commonwealth* v. *Krisco Corp.*, 421 Mass. 37, 45 (1995) (defendant demonstrated subjective expectation of privacy when he "installed gates at either end of the fenced alley [to protect his trash bin] and kept them closed until the waste hauler arrived"); *Commonwealth* v. *Linton*, 456 Mass. 534, 557 (2010) (defendant did not abandon backpack that he left in a room in his brother's home where he was staying and the brother did not have authority to consent to a search of the backpack); *United States* v. *James*, 353 F.3d 606, 615-616 (8th Cir. 2003) (defendant did not abandon computer discs he gave to third person to store; his subsequent instruction to destroy them was the "ultimate manifestation of privacy, not abandonment").

In sum, the defendant's act of hiding his backpack in the bushes in his best friend's yard without establishing that he

placed the backpack in someone else's control, while he was trying to avoid apprehension, and in particular, while he was in possession of a handgun, fails to evoke an expectation of privacy that society is willing to recognize as reasonable. See *Commonwealth* v. *Carter*, 424 Mass. 409, 412 (1997) (art. 14 "does not relieve a defendant who unlawfully intruded on someone else's reasonable expectation of privacy from establishing that he had a reasonable expectation of privacy himself"). The motion judge properly concluded that the backpack had been abandoned. See generally *United States* v. *Morgan*, 936 F.2d at 1570-1571, cited with approval in *Commonwealth* v. *Straw*, 422 Mass. at 760-761; *United States* v. *Soto*, 779 F. Supp. 2d at 219.

Even if we were to conclude that the defendant had not abandoned the backpack, exigent circumstances justified its warrantless search.[5] Although neither party argued this issue at the trial court level, we are free to affirm on this basis as long as the record and the findings support our decision. *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997). A search on this ground requires the Commonwealth to "demonstrate that the police had probable cause and were faced with exigent circumstances such as danger to their lives, danger to the lives of others, or the destruction of evidence, such that it would be impracticable to obtain a warrant." *Commonwealth* v. *Moore*, 54 Mass. App. Ct. 334, 338 (2002). See generally *Commonwealth* v. *Loadholt*, 456 Mass. 411, 422 (2010), *S.C.*, 460 Mass. 723 (2011). The existence of an exigency depends on an evaluation of all the circumstances as they appeared to the police at the time of the search and seizure. See *Commonwealth* v. *Hall*, 366 Mass. 790, 801-803 (1975). Here, the facts support the conclusion that the police had probable cause and faced exigent circumstances that rendered it impracticable to obtain a warrant.

The discovery that a teenager had been shot and killed, the immediate response by police in obtaining a physical description of the shooter and his flight path from eyewitnesses, together with the fact that another witness pointed the police to a shed, near that flight path, where he had seen the suspected shooter hide his backpack, established probable cause and exigent

---

[5]This issue was not raised by either party at the hearing on the motion to suppress, but both parties included the issue in their appellate briefs.    .

circumstances to search the backpack. At the time the backpack was located, neither the shooter nor the murder weapon had been found. The police had probable cause to believe that the gun that was used to commit the crime was in the backpack. Moreover, the police were justified in conducting a search of the entire backpack in an effort to determine the identity of the shooter. Nor was there any guarantee of the gun's condition or that it would not accidentally discharge. Given the exigency of the situation and the fact that probable cause existed to believe that the murder weapon was in that backpack, the police were justified in searching it. See *Commonwealth* v. *Moore*, 54 Mass. App. Ct. at 338-340. See also *United States* v. *Yanez*, 490 F. Supp. 2d 765, 772-773 (S.D. Texas 2007) (police "often must act in certain fast-moving situations to discover a possibly hidden weapon for their protection and that of the public"). Once police unzipped the backpack and observed a gun handle, which they could reasonably tie to the recent homicide, they were justified in conducting a full search of the backpack. See *Commonwealth* v. *Wunder*, 407 Mass. 909, 913 (1990) (exigent circumstances justified search of closed container in an automobile where there was probable cause that contraband could be in container); *Commonwealth* v. *Moore*, 54 Mass. App. Ct. at 338-340.

2. *Expert testimony.* Contrary to the defendant's claim on appeal, the testimony of the ballistics expert comported with the requirements set forth in *Commonwealth* v. *Pytou Heang*, 458 Mass. 827, 846-849 (2011), decided after the trial in this case. Trooper Stephen Walsh, a ballistics expert, testified that he examined and compared the single shell casing found at the scene with the shell casings from the test firing of the gun found in the backpack. Walsh gave an opinion that to a "reasonable degree of certainty in the ballistics community" the spent shell casing from the scene and the shell casings from the test firing were fired from the same weapon.[6] The qualifying language comported in all material respects with that set forth in *Pytou Heang*, namely, that an expert may offer an opinion to a

---

[6]The expert further testified, however, that he could not give an opinion regarding whether the bullet recovered during the autopsy of the victim was fired from the recovered weapon.

"reasonable degree of ballistic certainty." *Id.* at 848. The expert even acknowledged during cross-examination that ballistics examinations are intrinsically subjective. There was no error.

*Judgment affirmed.*