A Superior Court jury convicted the defendant on three indictments charging unlawful possession of a firearm in violation of G. L. c. 269, § 10(a ).[2] Each indictment further alleged that the defendant previously had been convicted of three violent crimes or serious drug offenses, thus subjecting him to enhanced sentencing as an armed career criminal under G. L. c. 269, § 10G(c ). At a jury-waived subsequent offender trial, the judge found that the defendant had committed each of the predicate offenses and that he was guilty of the subsequent portions of the indictments.
Following his convictions, the defendant filed a motion for a new trial in which he claimed ineffective assistance of counsel. He also filed a motion seeking funds to retain an expert in eyewitness identification and a motion seeking discovery of information related to identification procedures and the manner in which certain evidence was obtained. These motions were denied without a hearing by a judge who was not the trial judge.[3] The defendant's direct appeal was consolidated with his appeal from the denial of his motion for a new trial. The sole issue raised in both appeals is whether the defendant was deprived of the effective assistance of counsel.[4] For the reasons that follow, we affirm the convictions and the orders denying all postjudgment motions.
Background. We summarize the facts the jury could have found, reserving certain details for later discussion. On April 23, 2012, Massachusetts State police Troopers Orlando Tirella, Patrick Burke, Bradford Porter, and Sergeant Paul Bulman were conducting surveillance on a residence located at 26-28 Minnesota Avenue in Somerville in an effort to locate Robert F. Rogers, a white male, for whom they had an arrest warrant. The troopers were in plainclothes and were driving unmarked vehicles.[5] At approximately 3:00 P . M ., Tirella, Bulman, and Burke observed a light-skinned black or Hispanic male, subsequently identified as the defendant, leave the residence and enter a black Mercedes sedan that was parked on the street in front of the residence. The defendant backed into the driveway, waited a few minutes, and then drove away. At this point, a white male, whom the troopers believed to be Rogers, was in the front passenger seat. The troopers followed the Mercedes to a Hess gasoline station and convenience store where the defendant parked at a gas pump and then walked into the store, crossing paths with Burke as he did so. Meanwhile, the passenger began to pump gas into the Mercedes.
The troopers approached the passenger and identified themselves. At about the same time, Tirella saw the defendant emerge from the convenience store. When he saw the troopers, the defendant immediately turned and ran away. Porter and Burke chased after him, but the defendant was not found.
It was soon determined that the passenger was not Rogers. Because the passenger did not have a valid license to operate a motor vehicle and the defendant had fled, the troopers arranged to have the Mercedes towed and conducted an inventory search during which they found two shotguns and a semiautomatic rifle in the trunk. Upon discovering the firearms, the passenger was arrested. The Mercedes was then towed to the police station.
The next day, Tirella searched the Mercedes again (the second search) and found a medical test form (the document) under the driver's seat that was dated April 18, 2012, and contained the defendant's name and date of birth. Based on this information, Tirella obtained the defendant's driver's license photograph from the registry of motor vehicles (RMV) and concluded that the person in the photograph was the driver of the Mercedes. After viewing the photograph, Burke and Porter also identified the defendant.
During the ensuing investigation, surveillance video was obtained from the convenience store. The video and still photographs from the video depicting the defendant were introduced in evidence. The firearms were test-fired and determined to be operable. The firearms had been stolen from Rogers's grandfather, who resided at 26 Minnesota Avenue.
The defense at trial was misidentification. Through cross-examination of the Commonwealth's witnesses, the defendant attempted to undermine the troopers' identifications of him by highlighting the brevity of their interaction. The defendant also asserted that the quality of the surveillance video was not sufficient to make a reliable identification.
As indicated, the defendant filed a motion for a new trial. In that motion, and on direct appeal, he contends that trial counsel was ineffective for failing to file a motion to suppress the document seized during the second search of the Mercedes and for not attempting to exclude the troopers' identifications of him from the RMV photograph. He further alleges that counsel was ineffective because he did not adequately cross-examine Burke, object to the prosecutor's allegedly misleading statements during closing argument, request the standard jury instruction on identification, or present expert testimony on eyewitness identifications.
In a comprehensive memorandum of decision and order, the motion judge rejected the defendant's claims of ineffective assistance of counsel. We review her order denying the new trial motion to determine whether there has been a significant error of law or the abuse of discretion. See Commonwealth v. Grace, 397 Mass. 303, 307 (1988). The judge also denied the defendant's motions seeking discovery and funds. We review the denial of these motions for abuse of discretion as well. See Commonwealth v. Zagrodny, 443 Mass. 93, 108 (2004) ; Commonwealth v. Ware, 471 Mass. 85, 94 (2015).
Discussion. We review claims of ineffective assistance of counsel under the familiar two-prong Saferian test. Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). First, we examine "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinarily fallible lawyer." Ibid. Second, we examine whether such behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." Ibid. The defendant has the burden to establish both prongs. Commonwealth v. Pike, 53 Mass. App. Ct. 757, 760 (2002). After careful consideration of the record, we conclude, as did the motion judge, that the defendant has not met his burden.[6] We address each claim in turn.
1. Failure to challenge the second search. The defendant first contends that trial counsel was ineffective for failing to file a motion to suppress the document found by Tirella during the second search of the Mercedes.[7] In order to establish that counsel was ineffective on this ground, the defendant must "demonstrat[e] a likelihood that the motion[s] to suppress would have been successful." Commonwealth v. Comita, 441 Mass. 86, 91 (2004). He cannot do so, because it is undisputed that he abandoned the Mercedes and its contents when he fled.[8]
To prevail on a motion to suppress under art. 14 of the Massachusetts Declaration of Rights, the defendant must demonstrate that he has standing to contest the search and that he had an expectation of privacy in the area searched or in the item seized that society recognizes as reasonable.[9] Commonwealth v. Carnes, 81 Mass. App. Ct. 713, 716 (2012). For our present purpose, we assume without deciding that the defendant has standing. However, because it is well settled that a defendant has no right of privacy in property he has abandoned, a motion to suppress the document would have had no chance of success.[10] See Commonwealth v. Pratt, 407 Mass. 647, 660 (1990) ; Commonwealth v. Bly, 448 Mass. 473, 490-491 (2007) ; Commonwealth v. Perkins, 450 Mass. 834, 842 (2008) ; Commonwealth v. Ewing, 67 Mass. App. Ct. 531, 540 (2006) ; Commonwealth v. Cabral, 69 Mass. App. Ct. 68, 72 (2007). Accordingly, trial counsel was not ineffective for failing to pursue a motion to suppress the document. Commonwealth v. Conceicao, 388 Mass. 255, 264 (1983).
2. Failure to file a motion to suppress the photographic identifications. The defendant also claims that trial counsel should have moved to suppress the troopers' identifications of him from his RMV photograph. He contends that such a motion would have been successful on the ground that the circumstances surrounding the identifications were unnecessarily suggestive. We disagree.
"The burden [i]s on the defendant to prove by a preponderance of the evidence that the photographic identification was unnecessarily suggestive." Commonwealth v. Venios, 378 Mass. 24, 29 (1979). Nothing in the record warrants the conclusion that the defendant could have met this burden. As an initial matter, we observe that Tirella's identification was not the result of any procedure per se. Rather, Tirella appears to have made his identification during the ordinary course of his investigation. As regards the identifications made by Burke and Porter, the defendant has failed to point to any facts, other than that they viewed a single photograph, that would warrant a conclusion that the identification procedure was unnecessarily suggestive.
For constitutional purposes, a one-photograph identification is the equivalent of an in-person, one-on-one identification, a procedure which is generally disfavored. However, a one-photograph identification will not be suppressed unless the defendant proves by a preponderance of the evidence that the police procedure was "so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [the defendant] of due process of law." Commonwealth v. Carlson, 92 Mass. App. Ct. 710, 712 (2018), quoting from Commonwealth v. Dew, 478 Mass. 304, 306-307 (2017). In determining whether the identification is unnecessarily suggestive, we consider whether "good reason" exists for the police to use the procedure. Id. at 712-713. Here there was good reason to show Burke and Porter a single photograph, as no suspect was in custody at the time of the photographic identification and the troopers "had a definite image" of the operator in their minds. Commonwealth v. Venios, supra. "Moreover, there was no evidence of any 'special elements of unfairness' in the use of the defendant's photograph." Commonwealth v. Sylvia, 57 Mass. App. Ct. 66, 69-70 (2003) (citation omitted). Having considered the entire circumstances of the identification procedure, we conclude that the procedure employed in this case did not create a substantial risk of a mistaken identification. As such, a motion to suppress the identifications had no realistic chance of success. Commonwealth v. Whitlock, 74 Mass. App. Ct. 320, 324 (2009).
3. Failure to adequately cross-examine Trooper Burke. Next, the defendant claims that trial counsel was ineffective when he cross-examined Burke because he did not elicit testimony to clarify that Rogers, the person, and not 26 Minnesota Avenue, the residence, was the target of the troopers' surveillance. There is no merit to this argument.[11]
Burke testified on direct examination that the target of their surveillance lived at 26 Minnesota Avenue and that his attention was drawn to the Mercedes because someone "exited the target residence and walked over to [it] and got in the driver's seat." Burke further explained that when the Mercedes drove away, he could see that there now "appeared to be a white male in the passenger seat." In light of extensive testimony that the troopers were surveilling 26 Minnesota Avenue in order to locate Rogers, a white male, we very much doubt that further cross-examination to clarify that the troopers were interested in Rogers would have "accomplished something material for the defense." Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).
4. Failure to object to portions of the prosecutor's closing argument. In his closing argument, the prosecutor urged the jury to credit the troopers' identifications of the defendant because they "weren't just ordinary people who were making these observations," but had a "very specific purpose" of observing "what was going at 26 Minnesota Avenue" because "that [house] was the target of their investigation." The prosecutor argued that the troopers had paid special attention to the operator of the Mercedes because "somebody that they just saw coming out of the target residence[ ] is a person of potential interest." The defendant claims that trial counsel should have objected to these remarks because they "almost certainly suggested to the jury that the house was a known drug den or the site of other ongoing illegal activity and that anyone in the house was likely to be a participant in that activity."
We are not persuaded that the challenged comments conveyed to the jury that the defendant had any connection to an alleged "drug den" or other illegal activity. Furthermore, after reviewing the prosecutor's remarks "in the context of his entire closing argument, the judge's instructions to the jury, and the evidence produced at trial," Commonwealth v. Lyons, 426 Mass. 466, 471 (1998), we see nothing improper, let alone an error creating a substantial risk of a miscarriage of justice. As a result, defense counsel's failure to object to the challenged remarks does not amount to ineffective assistance of counsel. See Commonwealth v. Oliveira, 431 Mass. 609, 613 n.6 (2000).
5. Failure to request the standard instruction on eyewitness identification. The defendant faults trial counsel for failing to request the standard instruction on eyewitness identification as approved by the Supreme Judicial Court at that time. See Commonwealth v. Franklin, 465 Mass. 895, 910 n.24 (2013). However, trial counsel specifically requested that the judge give a modified identification instruction.[12] This was a strategic decision which, in our view, was not unreasonable. See Commonwealth v. Zagrodny, 443 Mass. at 98 ("As to claimed errors in trial counsel's strategy, none is established unless we are persuaded that counsel's tactics were manifestly unreasonable when undertaken" [quotations and citations omitted] ). More importantly, the instruction as given emphasized the importance of eyewitness identifications, informed the jury of the Commonwealth's heavy burden of proof as to the accuracy of the identification, and related the criteria by which the jury can assess the quality of the identification.[13] See Commonwealth v. Johnson, 470 Mass. 389, 395 (2015). Because the essential purposes of an identification instruction were fulfilled, we are confident that an additional instruction would not have substantially influenced the weight the jury ascribed to the identification testimony. Commonwealth v. Franklin, supra at 914. Accordingly, "[a]lthough the defendant may have been entitled to more detailed identification instructions had defense counsel [so requested], the failure to give such instructions did not create a substantial risk of a miscarriage of justice." Commonwealth v. Evans, 42 Mass. App. Ct. 618, 621-622 (1997). See Commonwealth v. Willard, 53 Mass. App. Ct. 650, 660-661 (2002) (no substantial risk of miscarriage of justice from lack of instruction where there was "no doubt that the defense of misidentification was squarely before the jury").
6. Failure to present expert testimony. Finally, the defendant contends that trial counsel was ineffective in failing to offer at trial the testimony of an expert on eyewitness identification. The defendant claims that such an expert could have provided evidence that (1) police officers are no better than lay witnesses at accurately recalling details or making identifications, (2) face perception begins to diminish at twenty-five feet, (3) identifications made from a single photograph more than thirty minutes after the incident are "no better than random chance," (4) the receipt of postevent information can alter memories of an incident, (5) longer durations of exposure to a perpetrator generally result in more accurate identifications, (6) "a person's capacity for processing information is finite" and the troopers' focus on Rogers may have affected their identifications of the defendant, and (7) cross-racial identifications are more likely to be incorrect than same-race identifications.
Through thorough cross-examination, however, defense counsel highlighted the distance from which the troopers observed the Mercedes, the fact that 26 Minnesota Avenue is a residential area with many obstructions, the brevity of the troopers' opportunity to observe the operator before he fled from the scene, the troopers' prior unfamiliarity with the defendant, the fact that the troopers were surveilling Rogers (a white male), and the fact that the troopers identified the defendant after discovering the document with his information on it. "As a practical matter, the jury were provided with" the very testimony for which the defendant now claims that he needed an expert, Commonwealth v. Alicea, 464 Mass. 837, 851 (2013), and we are not persuaded that the proffered expert testimony would have added materially to the defendant's case.
7. Denial of motions for discovery and funds. As indicated, the defendant filed motions for postjudgment discovery and funds. The discovery motion sought information about the State police policies concerning identification procedures and the manner in which the surveillance video from the gas station had been selected and obtained. "In order to prevail on a posttrial discovery motion, a defendant must demonstrate that it is reasonable likely that such discovery will lead to evidence possibly warranting a new trial." Commonwealth v. Camacho, 472 Mass. 587, 598 (2015). "Additionally, the defendant must make a prima facie showing that the evidence sought would have materially benefited the defense and would have factored into the jury's deliberations." Ibid. In the absence of any basis upon which we can conclude that the evidence sought would have a bearing on the question whether the defendant is entitled to a new trial, we conclude that the judge did not abuse her discretion in denying the motion for discovery.
Nor did the judge abuse her discretion in denying the defendant's motion for funds. Although we do not have the benefit of the judge's reasoning, we are persuaded that the funds sought were not reasonably necessary. See Commonwealth v. Zagrodny, supra at 108.
Conclusion. The defendant's convictions are affirmed. The orders denying the defendant's motions for a new trial, for posttrial discovery, and for funds are affirmed.
Judgments affirmed.
Orders denying defendant's postjudgment motions affirmed.

The defendant also was indicted on two counts of receiving stolen property in connection with the same incident. These charges were nol prossed before trial.

The trial judge had retired.

The defendant withdrew a remaining argument in a written waiver.

Bulman and Burke were in one car while Tirella and Porter were alone in separate vehicles.

Because we conclude that the defendant has not satisfied his burden of proving ineffectiveness of counsel, it follows that the motion judge did not abuse her discretion in denying the defendant's new trial motion.

Trial counsel did file a motion to suppress the firearms on the ground that the police lacked reasonable suspicion to stop the Mercedes and probable cause to search it. The motion was denied before trial by a different judge, who issued oral findings of fact and rulings of law at the conclusion of an evidentiary hearing. Although the issue was not before him, the judge ruled that the second search was lawful under the automobile exception to the warrant requirement.

We consider the question whether the defendant abandoned the Mercedes as a settled one. We note that the judge who denied the defendant's motion to suppress the firearms explicitly found that the defendant had abandoned the Mercedes at the gas pumps. While the defendant argues in his brief that his flight from the scene is not evidence of abandonment, he has not challenged the judge's finding as clearly erroneous. In fact, he has not challenged any aspect of the order denying the motion to suppress, either on appeal or in his motion for a new trial.

"Under the Fourth Amendment to the United States Constitution, the question whether the defendant has standing to challenge the constitutionality of a search or seizure is merged with the determination whether the defendant had a reasonable expectation of privacy in the place searched." Commonwealth v. Mubdi, 456 Mass. 385, 391 (2010).

In light of our conclusion, we need not address whether the second search of the Mercedes was justified under the automobile exception to the warrant requirement. See Commonwealth v. Johnson, 461 Mass. 44, 49 (2011) (setting forth exception).

The defendant's related claim, that counsel should have objected to the prosecutor's statement in closing argument that the defendant became a "person of interest" when the troopers saw him exit that residence, is similarly without merit.

During the charge conference, the judge stated that she would give the first paragraph of the standard identification instruction. However, because none of the witnesses made in-court identifications of the defendant, the judge stated her view that "the standard instruction doesn't work." The judge continued, "On the other hand, some aspects of it, if the defendant requests them, it seems to me are relevant." Trial counsel responded by asking "that the Court not give the portion of the instruction that talks about belief evidence or opinion evidence." Counsel did request that the judge give that portion of the instruction that "treats the witness's ability to perceive and the facts that factor into it." The judge stated, "So you don't want me to instruct them that essentially in this case the witnesses stated that an individual depicted in the photograph was the same person they had seen and in evaluating that they should consider the adequacy of the opportunity, et cetera." Defense counsel reiterated his position "that the opinion evidence should not be considered by the jury. And if you give the instruction making reference to that particular type of language, then it takes the case away from --" The judge interjected, "All right. So that's a strategy decision that you've made in terms of the requested instruction, is that correct?" Trial counsel responded, "Yes." The judge then stated that she would give the first paragraph of the standard instruction, "that the identification of the defendant as the 'perpetrator' is essential, and that they have to find, if they have a reasonable doubt they have to find that he is not guilty." There was no further discussion regarding the identification instruction.

The judge instructed the jury to consider "how good an opportunity [the] witness had to observe the facts about which he testified, the witness's mental and physical state at the time the observations were made, the degree of intelligence the witness shows, and whether the witness's memory seems accurate."