The defendant appeals from his convictions, after a jury trial in the Central Division of the Boston Municipal Court, of unlawful possession of a firearm and of ammunition. He argues that the motion judge erred in denying his motion to suppress those items, which he argued were the fruits of (1) a search of an apartment pursuant to an invalid warrant, (2) a seizure of his person without reasonable suspicion, and (3) an unlawful warrantless search of a plastic bag he dropped during his encounter with police. We reject these arguments and therefore affirm.
Background. We recite certain background facts found by the motion judge after an evidentiary hearing, reserving other findings for later discussion. The defendant does not argue that any of the judge's findings were clearly erroneous.
Boston police officers in plain clothes were executing a search warrant for firearms in the second floor apartment of a three-family residence in Dorchester. After they found a firearm, they heard a knock at the apartment door. They opened the door and saw the defendant standing on the second floor landing with a plastic bag under his left arm. After a brief conversation, the defendant ran down the stairs, and the officers pursued him. At the bottom of the stairs, the defendant dropped the bag and continued down the hall toward the front door. The officers caught up with him and grabbed him at the door; they restrained him on the front porch. A detective then returned to where the bag had been dropped, looked inside it, and found a firearm and ammunition. The defendant was arrested, tried, and convicted.
Discussion. 1. Fruit of invalid apartment search. The defendant argues that the seized items must be suppressed because they are the fruits of a search of the apartment pursuant to a warrant that was issued without probable cause. We disagree. A panel of this court, in an unpublished decision, has already rejected the same attack on the same warrant. Commonwealth v. Solomon, 92 Mass. App. Ct. 1107 (2017). The panel, concluding that there was probable cause to issue the warrant, reversed the allowance of motions to suppress items found in the apartment itself, filed by the apartment's resident (Carnell Solomon) and his brother (Cartrell Solomon). Assuming without deciding that the defendant remains free to challenge the warrant on the same grounds already rejected by the Solomon panel,[2] we agree with the reasoning of that panel's decision.
There is an additional, independent reason for upholding the search as to this defendant. Under the attenuation doctrine, the firearm and ammunition seized in the front common hallway were not fruits of the apartment search and therefore would not have to be suppressed even if the warrant were called into question. "The attenuation doctrine provides an exception to the exclusionary rule under which evidence obtained by police as a result of an unlawful search need not be excluded if the connection between the illegal search and the evidence is so attenuated as to dissipate any taint of illegality." Commmonwealth v. Long, 476 Mass. 526, 536 (2017), citing Commonwealth v. Fredette, 396 Mass. 455, 458-463 (1985). "The theory of dissipation of the taint attempts to determine the point of diminishing returns at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its costs." Long, 476 Mass. at 536. Application of the attenuation doctrine depends on "[1] the length of time between the unlawful search and the discovery of the evidence (temporal attenuation); [2] whether any circumstances intervened between the illegal act and the discovery of the evidence (intervening circumstances); and [3] how integral the unlawful search was to the acquisition of the evidence (purpose and flagrancy of the unlawful conduct)."[3] Id.
Here, to be sure, the temporal attenuation between the apartment search and the seizure of the firearm and ammunition from the plastic bag was minimal -- perhaps a matter of a minute or two. But this is not dispositive. "See ... Commonwealth v. Gallant, 381 Mass. 465, 466-467, 470 (1980) (lapse of mere minutes between defendant's unlawful arrest and decision to make statement, when considered in conjunction with other factors, was sufficient to dissipate taint)." Long, 476 Mass. at 537. See also Commonwealth v. Johnson, 58 Mass. App. Ct. 12, 14 (2003).
More important in this case were the intervening circumstances. By pure happenstance, while the police were executing the search warrant, the defendant knocked on the apartment door, holding the bag under his left arm. After the officers opened the door and saw the defendant standing on the landing, they engaged in what the judge found was "a casual conversation in the nature of asking each other, 'What's up?' " When a detective identified himself and his colleague as police officers searching the apartment, the defendant stopped making eye contact, "stuttered" that he was at the apartment to visit his brother, and "bladed" the left side of his body away from the officers as if to conceal the bag.[4] The detective asked the defendant his name, at which point the defendant ran down the stairs "at a full sprint." The officers pursued him. At the bottom of the stairs, the defendant dropped the bag and continued down the hall toward the front door. After the officers restrained him on the front porch, the detective returned to the bag and found the firearm and ammunition inside it.
On these facts, the defendant's "fortuitous appearance" outside the apartment "was an independent intervening circumstance neither sought nor procured by the police." Johnson, 58 Mass. App. Ct. at 14. The defendant's own "sudden flight," Commonwealth v. Holmes, 34 Mass. App. Ct. 916, 917 (1993), substantially attenuated the causal relationship between the search of the apartment and the seizure of the items in the downstairs hall.
Finally, as to the "purpose and flagrancy" factor, "we ask, first, whether the police performed the [claimed] illegal act for the purpose of obtaining the evidence that the defendant seeks to suppress, and second, whether the police knew that their actions were illegal but proceeded anyway." Long, 476 Mass. at 537-538. Here, as a matter of logic, the police did not search the apartment for the purpose of obtaining the evidence that the defendant later chose to drop in the downstairs hall. Nor did the police have any reason to think that the warrant to search the apartment might be invalid. Moreover, they "did not confront the [defendant] with [any] illegally obtained evidence in order to coerce" him to flee and drop the bag, ids="12462693" index="11" url="https://cite.case.law/mass/476/526/#p536">id. at 538, or otherwise "exploit[ ]" the search of the apartment in order to discover the firearm and ammunition in the dropped bag. Fredette, 396 Mass. at 459, citing Wong Sun v. United States, 371 U.S. 471, 488 (1963). In sum, the attenuation factors cause us to conclude that the discovery of the firearm and ammunition was not a fruit of the apartment search.
2. Seizure without reasonable suspicion. The defendant next argues for suppression on the ground that he was seized at the moment he began to run down the stairs with the police in pursuit and that, at that moment, they lacked reasonable suspicion for the seizure. We disagree. As the judge concluded, "[T]he defendant was not seized for constitutional purposes until after he dropped the bag and was attempting to leave the building," at which time the police had a reasonable suspicion that he had possessed an illegal firearm.
In determining the precise moment at which a seizure in the constitutional sense occurred, we ask whether, in view of all of the circumstances, a reasonable person would have believed that he was free to leave. Commonwealth v. Sykes, 449 Mass. 308, 310-311 (2007). We acknowledge that "Massachusetts law, unlike Federal law, provides that a seizure, in the constitutional sense, may occur before police officers, in pursuit of a suspect, physically detain the person." Commonwealth v. Shane S., 92 Mass. App. Ct. 314, 319 (2017), citing Commonwealth v. Stoute, 422 Mass. 782, 785-789 (1996). "However, a 'claim of police "pursuit" by [a] defendant ... is not a talismanic formula for converting all police investigation into a stop and seizure.' " Shane S., supra, quoting Commonwealth v. Laureano, 411 Mass. 708, 709-710 (1992). "[M]erely running after a running person, without more, does not effect a seizure in the constitutional sense." Shane S., supra at 321, quoting Commonwealth v. Perry, 62 Mass. App. Ct. 500, 502 (2004).
Here, at the moment the defendant fled down the stairs, the police had done nothing except engage in a casual, "[w]hat's up" conversation, identify themselves as police officers conducting a search, and ask him his name. They did not "implicitly or explicitly assert that the [defendant was] not free to ignore their inquiries." Commonwealth v. Murdough, 428 Mass. 760, 763 (1999). The "defendant's flight was not prompted by anything the police did," nor was there "evidence that the police exercised any show of authority or commanded the defendant to stop." Commonwealth v. Franklin, 456 Mass. 818, 823 (2010). The police pursuit did not objectively indicate to the defendant that he was not free to leave.[5] We conclude, as did the judge, that the seizure did not occur when the defendant fled down the stairs, or when the police responded by pursuing him, but instead when they physically restrained him after he dropped the bag and was attempting to leave the building.
By that time, if not before, the police had a reasonable suspicion that the defendant had illegally possessed a firearm. This suspicion arose from a combination of the defendant's abrupt change in demeanor when the police identified themselves and their purpose for being in the apartment; his "blading" of his body, in a manner that made the trained officer suspect him of attempting to conceal a firearm in the bag under his arm;[6] and his sudden flight "at a full sprint" when the police asked his name.[7] Moreover, the officers had just recovered a firearm in the apartment; they knew that, on past occasions, police had previously responded to the same address for "shots fired"; and they had made arrests for firearms and drugs in the area. See Shane S., 92 Mass. App. Ct. at 323 (that area where seizure occurred had been scene of previous firearm incidents was factor supporting reasonable suspicion). We have no difficulty concluding that the officers had reasonable suspicion to stop the defendant.
3. Warrantless search of plastic bag. The defendant finally argues that, even if he was lawfully seized after dropping the bag, the detective unlawfully searched the bag without a warrant.[8] We agree with the judge, however, that the defendant had abandoned the bag. Accordingly, looking inside the bag was not a search in the constitutional sense and did not require a warrant.
"A search in the constitutional sense requires that the defendant must have had a subjective expectation of privacy in the item or place searched, and that such expectation must have been one that society recognizes as reasonable." Commonwealth v. Carnes, 81 Mass. App. Ct. 713, 716 (2012). "The defendant bears the burden of establishing both elements." Id., quoting Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). "Here, the judge's conclusion of abandonment requires us to consider whether the defendant manifested a subjective expectation of privacy in the place searched, and in the contents of [the bag], [that] 'could be considered objectively reasonable or legitimate.' " Carnes, supra, quoting Commonwealth v. Straw, 422 Mass. 756, 759 (1996). At least in its subjective aspect, "abandonment is a question of intent, which may be inferred from words, behavior, and other objective facts." Carnes, supra, citing Commonwealth v. Paszko, 391 Mass. 164, 184 (1984).
Here, the defendant argues that he "demonstrated a subjective intent [to] keep[ ] the bag and its contents private by discarding the bag as he was being chased by officers in the common hallway of the three-family home." But he points to no evidence supporting this assertion, on which he acknowledges he had the burden of proof. See Carnes, 81 Mass. App. Ct. at 716.
Regardless, we reject the defendant's claim that any such expectation of privacy is one that "society recognizes as reasonable." Id. Because the defendant "was neither the owner nor did he establish any right of control over the property," id.-- i.e., over the first-floor common hallway, let alone any other part of the multi-family building -- he had no reasonable expectation of privacy in the bag or its contents once he dropped it on the floor of the hallway. He was not a resident, nor did he otherwise show that he had any particular right to be there.[9] See Straw, 422 Mass. at 761-762 (citing cases in which abandonment occurred once "the defendant threw, dropped, or left the container, or some other item, in an area in which, by law, he or she had no reasonable expectation of privacy"); Commonwealth v. Pimentel, 27 Mass. App. Ct. 557, 558-559, 562 (1989) (once defendant, approached by police on street, dropped bag, without prompting or wrongdoing by police, officer free to retrieve it). Nor did the defendant, in dropping the bag where and when he did, take "normal precautions to maintain his privacy," such as "le[aving] the item to the care or responsibility of another." Carnes, 81 Mass. App. Ct. at 717.
The defendant observes that the common hallway of a multi-family building could in some circumstances be found to be within its curtilage, in which case the hallway would be a "constitutionally protected area" without any need to analyze further the existence of a reasonable expectation of privacy. See Commonwealth v. Leslie, 477 Mass. 48, 49, 53-58 (2017). But Leslie, unlike this case, recognized the constitutional protection enjoyed by a resident of a multi-family building. In Leslie, the court held that an unlicensed police intrusion into the side yard of a multi-family building was a search in the constitutional sense, relieving a building resident (the defendant Price) and "by extension" his codefendant Leslie, "of the burden to show that Price had a reasonable expectation of privacy in the area searched." Id. at 57, citing Florida v. Jardines, 569 U.S. 1, 10-11 (2013). Here, in contrast, only the defendant, who was not a resident of the building, challenged the police examination of the bag.
In sum, because the defendant retained no reasonable expectation of privacy in the bag or its contents, no search of the bag in the constitutional sense occurred, and thus the lack of a warrant furnished no ground for suppression.
Judgments affirmed.

Solomon was the Commonwealth's interlocutory appeal from so much of a decision as allowed two of the three defendants' motions to suppress the items found inside the apartment. In its appeal, the Commonwealth did not challenge the judge's order as to the defendant here, Mason; he therefore did not participate in that appeal.

"We do not apply a 'but for' test in determining whether to suppress [evidence] obtained after an unlawful search." Long, 476 Mass. at 536.

One of the officers testified that "blading" refers to the action of a person who is carrying a firearm and encounters a police officer; the person will "blade the part of their body that is armed away from the police officer." The officer based this testimony on his training in how to recognize when a person is armed and his ten years of experience, including more than one hundred firearm arrests.

The defendant's reliance on Commonwealth v. Meneus, 476 Mass. 231 (2017), is unavailing. There, after police requested permission to pat frisk (for officer safety purposes) a group of young men on the street, some of the men reluctantly acquiesced, but the defendant did not. Id. at 235. "Observing that the police were intent on pat frisking the group, the defendant attempted to leave the scene. The police officer's response, pursuing the defendant as he backed away, communicated unequivocally that refusing to submit to the 'request' was not an option." Id. The officer's conduct thus impeded the defendant's movement and constituted a seizure for constitutional purposes. Id. There was no comparable police conduct here.

The defendant argues that his turning his body was "just as consistent" with preparing to go down the stairs as with an attempt to conceal a firearm. But the judge was entitled to and did credit the officer's testimony, based on his training and experience, that he viewed the turning motion as just such an attempt. The defendant also argues that possessing a firearm is not necessarily a crime, Commonwealth v. Couture, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990), and that "the observation of a furtive gesture, such as attempting to conceal an object," does not give rise to probable cause. Commonwealth v. Alvarado, 420 Mass. 542, 549 (1995). Nevertheless, a person's attempt to conceal a firearm from police supports a reasonable suspicion that the person illegally possesses the firearm or otherwise "has committed, is committing, or is about to commit a crime." Commonwealth v. Wilson, 360 Mass. 557, 559-560 (1971). See Commonwealth v. DePeiza, 449 Mass. 367, 373-374 (2007).

This case is not like Commonwealth v. Warren, 475 Mass. 530 (2016), where the court recognized that "evasive conduct in the absence of any other information tending toward an individualized suspicion that the defendant was involved in [a] crime is insufficient to support reasonable suspicion." Id. at 538. Here, the defendant's change in demeanor coupled with his "blading" constituted such "other information." See Shane S., 92 Mass. App. Ct. at 323-324.

The defendant recognizes that a warrantless search may be justified by exigent circumstances, but he argues that no such circumstances were present here. We need not reach this argument, in light of our conclusion infra that no search occurred.

The officer testified that the defendant said, "I'm here to see my brother." There was no evidence that the defendant was actually the brother of anyone who lived in the apartment or that he had been invited or allowed onto the premises by any resident of any of the three apartments.